STATE OF NEW YORK
SUPREME COURT: COUNTY OF BROOME
------------------------------------------------------------x

MARIBETH VALADA,

                        Plaintiff,

v.

ARMAND V. CUCCINIELLO, JR.,
ANTHONY DIGIOVANNI, and
ATP INVESTIGATIONS LLC,

                        Defendants.
------------------------------------------------------------x

**VERIFIED COMPLAINT**

**Jury Trial Demanded**

    Plaintiff MariBeth Valada, by and through her attorney, Ronald R. Benjamin, Law Office of Ronald R. Benjamin, as and for her Complaint against the above-named defendants, herein alleges as follows:

## PARTIES

1. Plaintiff MariBeth Valada resides in the State of New York, Broome County.

2. Defendant Armand V. Cucciniello, Jr., is employed as Director of Property Management, for the Winding Brook Management Corp., and for its domestic limited-liability company Holly Manor Associates LLC, in Vestal, New York.

3. Defendant Anthony DiGiovanni, upon information and belief, resides or has his principal place of business at 2151 Village Road, Sea Girt, New Jersey 08750.

4. Defendant ATP Investigations LLC is a New Jersey Domestic Limited-Liability Company, and is a foreign limited-liability company doing business in New Jersey and New York, and upon information and belief, its office is located at 2151 Village Road, Sea Girt, New Jersey 08750, with its mailing address at P.O. Box 8214, Parsippany, New Jersey 07054, and at all times relevant herein engaged in and supplied investigative services transacted in person by its

employee Anthony DiGiovanni within the State of New York.

## STATEMENT OF FACTS

5. Plaintiff Valada was employed at all times relevant hereto as a property manager for Winding Brook Management Corp. ("Winding Brook"), and Holly Manor Associates LLC ("Holly Manor"), in Vestal, New York as well as other entities from November 2011 until March 2022.

6. Defendant Cucciniello is and at all relevant times was the director of property management of Winding Brook and Holly Manor, and other entities as well and was plaintiff's supervisor from the time she was hired until she resigned on March 10, 2022, as more fully set forth below.

7. Shortly after hiring plaintiff Valada in 2011, defendant Cucciniello began making sexual advances toward plaintiff by use of his managerial position to have her engage in intimate relations with him, and his aforesaid conduct continued up until the time of her resignation on March 10, 2022.

8. On March 10, 2022, plaintiff retained undersigned counsel who advised that she was the victim of gender discrimination and sexual harassment, and sent out a demand letter to her employer setting forth details regarding her supervisor Cucciniello seeking sexual favors and otherwise engaging in gender discrimination against her, and seeking to resolve her claim without the need to resort to litigation. (Said March 10 letter is incorporated herein by reference and annexed hereto as **Plaintiff's Exhibit A**).

9. Upon information and belief, thereafter defendant Cucciniello retained or otherwise entered into an agreement hiring defendant DiGiovanni and engaged and conspired in the tortious activities that are described below which were done for the purpose of defaming plaintiff,

smearing her reputation, and otherwise maliciously seeking to intimidate and deter her from pursuing a sex discrimination claim as aforesaid.

10. At all times herein mentioned, DiGiovanni was an employee of ATP, and ATP is liable for the conduct set forth below under the doctrine of respondeat superior.

11. The conduct set forth below was carried out under the veneer of doing an investigation when in fact under the guise of questioning witnesses the individual defendants conspired to and did engage in malicious lies, threats and other misconduct as is more fully set forth below.

12. As a harbinger of the conduct described below, on April 4, 2002, Michael E. Coslit, Esq., who appears to be an attorney with offices at 1297 Centennial Ave., Piscataway, New Jersey, and acknowledged plaintiff's employment by Holly Manor Associates since November 2011, and sent a letter to the plaintiff's counsel in which he stated, *inter alia*, "your client is a mature adult with a possible sordid background which we intend to fully explore and properly expose if my client is forced to defend himself and his business enterprises". (Said letter is annexed hereto as **Plaintiff's Exhibit B** and incorporated herein by reference).

13. Upon information and belief, shortly after plaintiff's counsel notified defendant Cucciniello of her intention to bring a sex discrimination action against him and the entities, upon information and belief, Cucciniello contracted with and provided information to defendants ATP and DiGiovanni, who, in concert with defendant Cucciniello, began contacting in person individuals residing in New York on or about at least three or more dates, including March 29, April 6, and April 27, 2022, whom he knew were her family, her personal and professional colleagues for the purpose of attempting to intimidate these persons and smear the plaintiff's reputation.

14. Among the individuals contacted by defendants so far, to the plaintiff's knowledge, are residents in the state of New York, including: Sue Ann Hutching, Karen Lawrence Roseman, Sherry Brill, Chris Kilmer, Susan Quinto, Joe DeGennaro, Andy and Lisa Wacendak, Tina Caswell, Mary Claire Truman, Rene Hillagas, Bruce Swindlehurst, Pam and Anthony DeLucca, and Dawn Moochler.

15. Upon information and belief, in questioning certain persons, defendant DiGiovanni, engaged in defamation and defamation *per se*, falsely suggesting to them that plaintiff was promiscuous, engaged in previous relationships with married men, made or threatened false claims of sexual harassment for money, and was dishonest in every-day dealings, and maligned plaintiff's reputation in the following respects:

(a) On or about March 29, 2022, defendant DiGiovanni contacted Dawn Moochler and interviewed her extensively, during which they had an interchange in which he asked Ms. Moochler did MariBeth ever say anything about being depressed, to which she responded "No", whereupon defendant asked her, "Did you know that she has been treated for depression?".

(b) On or about March 29, 2022, defendant DiGiovanni contacted Marty Lewis, plaintiff's ex-husband, and falsely told Lewis that plaintiff "had made claims that you [Lewis] had physically abused her." In a follow-up call to Lewis on or about April 6, defendant DiGiovanni told Lewis he was calling as a "courtesy from one father to another" to let Lewis know he was going to be reaching out to speak to plaintiff's two sons.

(c) On or about April 6, 2022, defendant DiGiovanni spoke in person with Joe DeGennaro, in the course of which defendant asked him, "Did you know {Valada]

is mentally unstable?", "Did you know [Valada] has a history of carrying on affairs with married men?", and "Did you know [Valada] has a history of claiming sexual harassment?"

16. Defendant DiGiovanni as Cucciniello's agent sought to intimidate plaintiff directly and, upon information and belief, other individuals who did not want to speak with him by untruthfully threatening to subpoena those individuals even though he knew at that time there was no legal action pending and it was completely frivolous to threaten use of the subpoena power of the courts in the first instance because he was not an attorney and secondly because it was frivolous to make such assertions without the existence of a cause of action and the same was done by defendants, in person or as agent, solely for the purpose of intimidating plaintiff and individual witnesses to whom he was speaking to be unwilling and refuse to be her witnesses and maligning plaintiff for that purpose.

17. Upon information and belief, the defendants have been or in the future may continue to malign plaintiff's reputation in the local community in New York, and will continue to defame plaintiff in the process of their efforts to intimidate or negatively influence her personal and professional colleagues and friends and family to undermine her legal claims against her employer and her former supervisor defendant Cucciniello.

## FIRST CAUSE OF ACTION
### (Defamation and Defamation *per se*)

18. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

19. As described above, defendant DiGiovanni stated false information about plaintiff while undertaking interviews on meeting or calling the aforesaid persons as part of an

investigation regarding, *inter alia*, plaintiff's personal and professional life and the circumstances surrounding the discriminatory conduct of her former supervisor Cucciniello towards her in his position as director of property management.

20. Defendant DiGiovanni's statements constitute defamation or defamation *per se* because they impugn plaintiff Valada's honesty, trustworthiness, dependability, and professional fitness and abilities by falsely claiming, *inter alia*, that she engaged in a wholly consensual affair with Cucciniello and that plaintiff committed a crime by extorting Cucciniello and the management company. As described above, in concert with defendant Cucciniello, defendant DiGiovanni has stated false information regarding, *inter alia*, the circumstances surrounding plaintiff's conduct and legal right to seek to resolve or settle with her employer due to her supervisor's misconduct.

21. Defendants knew or should have known such defamatory statements were false, and made such defamatory statements with knowledge of their falsity and/or with a reckless disregard for their truth or falsity.

22. Defendant DiGiovanni's defamatory statements have harmed plaintiff's personal and professional reputation and standing in her community and industry, have caused her economic harm, have caused her to incur special damages in the form of actual pecuniary loss, including lost income, caused her to incur special damages in the form of actual pecuniary loss, including lost income, benefits, job security and opportunities for career advancement and have caused her embarrassment, humiliation and emotional injury.

23. As a direct and proximate result of defendants' defamatory conduct, plaintiff has suffered, and continues to suffer, from humiliation, loss of standing in the community, loss of self-esteem and public esteem, public disgrace and emotional distress.

24. Defendant DiGiovanni, acting in concert with defendant Cucciniello, made such defamatory statements with knowledge of their falsity and/or with a reckless disregard for their truth or falsity.

25. Defendant DiGiovanni's statements constitute defamation *per se* because they accuse plaintiff of committing a crime, namely, extortion.

26. Defendant DiGiovanni's statements constitute defamation and defamation *per se* because they impugn plaintiff's honesty, trustworthiness, dependability and accuse her of a crime, and as a direct and proximate result of defendants' conduct, plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of compensatory damages and other relief.

27. Defendant DiGiovanni's defamatory statements were malicious, willful, wanton, and done with reckless disregard for plaintiff's rights. Therefore, plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

28. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

29. Defendant DiGiovanni acting in concert defendant Cucciniello engaged in conduct toward plaintiff that is extreme and outrageous so as to exceed the bounds of decency in a civilized society; namely by, *inter alia*, subjecting her to defamatory statements and publicly accusing her of the crime of extortion.

30. These actions were taken with intent to cause, or disregard for, the substantial probability of causing severe emotional distress.

31. Defendant DiGiovanni threatened or announced his intent to contact the plaintiff's two sons and to continue trying to find additional individuals for the purpose of spreading malicious lies and intimidating the plaintiff from pursuing her sex discrimination claim against her former boss defendant Cucciniello and others who employ him.

32. As a direct and proximate result of defendant DiGiovanni's extreme and outrageous conduct of malicious defamation of plaintiff to third parties identified above, plaintiff has suffered severe emotional distress, for which defendants are liable in compensatory damages.

33. Defendant DiGiovanni's conduct was wanton, malicious, willful and/or cruel, entitling plaintiff to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. An award of compensatory damages against defendants, who are jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all monetary and/or economic damages;

B. An award of compensatory damages against defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

C. An award of compensatory damages for any and all other monetary and/or non-monetary losses suffered by plaintiff, including, but not limited to, loss of income, reputational harm and harm to professional reputation, in an amount to be determined at trial, plus prejudgment interest;

D. An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

E. Prejudgment interest on all amounts due;

F.    An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and, such other and further relief as the Court may deem just and proper in the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: May 3, 2022
Binghamton, New York

_____
Ronald R. Benjamin, Esq.
Law Office of Ronald R. Benjamin
*Attorney for Plaintiff MariBeth Valada*
126 Riverside Drive, P.O. Box 607
Binghamton, New York 13902-0607
(607) 772-1442

## VERIFICATION

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF BROOME   )

     MariBeth Valada, being duly sworn, deposes and says: I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

_MariBeth Valada_ (signature)
MariBeth Valada

SUBSCRIBED AND SWORN TO
before me this 3rd day of May, 2022.

_Diane E. Walter_ (signature)
NOTARY PUBLIC

DIANE E. WALTER
Notary Public in the State of New York
Qualified in Broome County
No. 01WA6088956
My Commission Expires March 17, 2023

# Exhibit A

# LAW OFFICE OF RONALD R. BENJAMIN
## ATTORNEYS AT LAW

Ronald R. Benjamin*
Marya C. Young*

126 Riverside Drive
P.O. Box 607
Binghamton, NY 13902

*Also Admitted in the District of Columbia

(607) 772-1442 phone
(607) 772-1678 facsimile

Email: ronbenjaminlaw@stny.rr.com

March 10, 2022

*Via Regular Mail and Email*
Holly Manor Associates
Armand Cucciniello, Director of Property Management
For My Children Vestal, NY LLC (FMC)
Peter and Sharon Green Trust
Main and Broad Associates
Fuller Hollow Associates
3129 Burris Associates
c/o Winding Brook Corporation
1945 Morris Avenue, Suite 10
Union, NJ 07083

Re:  MariBeth Valada

Dear All:

Please be advised that this office represents MariBeth Valada.

I have included all of the entities above because Ms. Valada has done work in one capacity or another for each of the above entities.

As will be shown below, virtually from the time she began working for the entities, that is around November 2011, she has been the victim of gender discrimination as outlined below and this letter should be considered an effort to try to resolve the claims without resorting to litigation. The settlement demand is $250,000 or that the home in which Ms. Valada currently resides is signed over to her in fee simple. The reasonableness of the demand is demonstrated in the discussion which follows.

It seems Armand Cucciniello had an interest in her that extended beyond normal employment relationships when he asked her if she had a problem living on-site about the time she was initially interviewed. Whether or not this is the case will depend in part on what the policies were with respect to providing housing for property managers in the past.

It was not long before Mr. Cucciniello began utilizing his position as CEO to exact sexual favors from Ms. Valada. At that time she was learning the ropes and wanted to make a career in the field of property management so when he first started coming on to her he did so in a not too subtle

FILED: BROOME COUNTY CLERK 05/03/2022 05:21 PM
NYSCEF DOC. NO. 3

INDEX NO. EFCA2022000867
RECEIVED NYSCEF: 05/03/2022

Case 3:22-cv-00703-MAD-ML   Document 2   Filed 07/05/22   Page 13 of 17

Page 2 of 3

manner implying she would move forward in her position, though it came about later his promise to give her property interest if she continued to engage in sexual relations with him.

She moved into a two-bedroom and soon thereafter a three-bedroom at which time the advances became more frequent. Ms. Valada was especially vulnerable because she had been alone and was trying to start a new life after getting out of a 16- year marriage and Mr. Cucciniello took full advantage of that circumstance. He managed to make sure that her entire life revolved around him basically requiring her to be available to him 24/7.

He would have her come to New Jersey ostensibly for work purposes, but when she arrived the only work involved servicing him rather than engaging in any of her managerial duties. As things went on he completely dominated her activities, at one point raising a major objection over the fact that she got a dog because she was lonely. He wanted her to have no contact or relationships with anyone and place her focus exclusively on him and his needs while she was also devoting herself 24/7 to her duties with the various entities described above.

Ms. Valada did everything from showing apartments as required, making sure the tenants' rent were paid on time, making sure that all of the various apartments were properly maintained and, depending on season, everything from mowing lawns to salting the sidewalks which were all properly carried out under her supervision.

She was instrumental in the purchase of 3 houses on Burris Road in Vestal, New York around 2015 and he had her move into the residence at 3149 Burris Road after the same was fully refurbished.

Ms. Valada knew that Mr. Cucciniello was married and would never have entertained having any type of relationship with him but for the fact that he was her boss and as the years went by she felt completely trapped by him. In order to ensure her "loyalty," he did provide her with a house and paid for related living expenses such as utilities, water and purchase of household items none of which I believe would be part of the policies applicable to employees historically and done here solely to maintain his domination over her. Indeed, he had cameras installed so that he could be aware of the goings-on in her apartment when he was with his wife and family in New Jersey.

At this juncture, since I would like to see if settlement is a viable avenue to pursue before moving ahead with litigation, I am not going to polarize matters by detailing the extent of sexual activity that went on often during business hours, especially when she had to make trips to New Jersey, at which point it was almost always during business hours.

Since Mr. Cucciniello is fully aware of what transpired, I am sure he can provide the details sufficient for you to evaluate whether or not the demand made herein is reasonable.

I suggest you consult counsel who will undoubtedly advise you that an employer's use of a superior position such as in this case clearly amounts to gender discrimination and it violates not only the Executive Law of the State of New York, but also Title VII of the Civil Rights Act of 1964 which prohibits discrimination based on gender.

The federal statute provides for attorney's fees to be paid by the employer if the employee prevails, and while that issue is discretionary, given the conduct alleged herein, I am confident that in addition to compensatory damages, fees will likely be awarded as well as punitive damages since I believe that a jury will likely be angry at the reckless disregard he evinced regarding her rights as a human being and because of the manner in which he took advantage of her and the fact that he used her as a sex slave for almost a decade.

Page 3 of 3

    Given the seriousness of this matter, I will wait 30 business days to give you an opportunity to determine whether or not there is any interest in settlement and, if I do not hear back, a lawsuit will be commenced seeking compensation for the conduct described above.

    Finally, Ms. Valada's last day of employment will be March 11, 2022. She will be dropping off files, the computer and any other related materials at the office. Accordingly, there is no reason to contact her and any further communication should be directed to this office (however if you have work-related questions she remains willing to answer those so long as this litigation is not discussed).

                                                  Very truly yours,

                                                  Ronald R. Benjamin

RRB:pb

# Exhibit B

# LAW OFFICE OF MICHAEL E. COSLIT, LLC
### 1297 CENTENNIAL AVENUE
### SUITE 5-361
### PISCATAWAY, NEW JERSEY 08854
PHONE: (732) 692-6868
FAX: (732) 692-6864
MOBILE: (732) 673-6736
EMAIL: michael@coslitlaw.com

April 4, 2022

**Via Regular Mail and Email**
Ronald R. Benjamin, Esq.
Law Office of Ronald R. Benjamin
126 Riverside Drive
P. O. Box 607
Binghamton, NY 13902

RECEIVED
APR 4 2022
Initial: [signature]

Re:   MariBeth Valada

Dear Mr. Benjamin:

    I represent Mr. Armand Cucciniello and the various legal entities cited in your letter of March 10, 2022 regarding MariBeth Valada. It is on their behalf that I respond to your correspondence.

    My clients vigorously dispute the allegations that you portray regarding a relationship involving Ms. Valada and Mr. Cucciniello. Admittedly, Ms. Valada was an employee of Holly Manor Associates since on or about November 2011. It is absurd to believe your contention that she worked for the company for more than 10 years in an abusive situation without seeking available relief. I understand that Ms. Valada has **voluntarily and abruptly** resigned her position with Holly Manor Associates effective March 10, 2022. She was not employed or controlled by the several other legal entities that you have gratuitously cited. This being the case, any action that you pursue against these entities will be deemed a frivolous act, exposing your client and yourself to remedies available to aggrieved parties.

    With respect to Holly Manor Associates, the company has no record of complaint from your client regarding Mr. Cucciniello or any alleged sexual harassment/gender discrimination permitted by the company throughout her long-term employment. If truly aggrieved, Ms. Valada never availed herself of the Company's published policy against sexual harassment. Since Ms. Valada was a long-term employee and provided numerous opportunities to raise any concerns that she had but failed to do so, it is questionable that her present complaint has any validity and/or merit.

You allege that Ms. Valada was a "victim" of Mr. Cucciniello's sexual harassment. To the contrary, any long-term intimate relationship between them was purely consensual without any element of *quid pro quo*. Your client is a mature adult with a possible sordid background which we intend to fully explore and properly expose if my client is forced to defend himself and his business enterprises.

It has come to our attention that Ms. Valada, without the requisite authority from her employer, terminated the Company's Verizon Cloud Account that she enjoyed as an employee. We assume that this was done for vengeful reasons or to secret her self-serving activities during employment. Accordingly, we demand her immediate reactivation of the account, full, unbridled access to the account by the Company and a return to the Company of a list of all passwords, codes and other access records in her possession. Failure to abide by this demand shall be deemed spoliation of evidence and result in consequences thereto.

My clients will not be blackmailed or otherwise coerced into succumbing to your ludicrous demand for $250,000 or the Company's home in which Ms. Valada currently resides as a payoff. Rather, my clients will vigorously defend any action that you pursue without any legal or factual basis.

Notwithstanding anything stated above, my clients are prepared to discuss a reasonable severance package, not to exceed my client's anticipated litigation expenses to resolve this dispute. Please advise me if you are agreeable to such discussion within 10 days of the date of this letter or consider this offer withdrawn.

Very truly yours,

*Michael E. Coslit*
Michael E. Coslit

MEC/ab