**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**MARIBETH VALADA,**

                          **Plaintiff,**

      vs.                                              3:22-CV-00703
                                                                (MAD/ML)

**ARMAND V. CUCCINIELLO, JR.,**
**ANTHONY DIGIOVANNI, and**
**ATP INVESTIGATIONS LLC,**

                          **Defendants.**

_____

**APPEARANCES:**                                    **OF COUNSEL:**

**LAW OFFICE OF RONALD R.**          **RONALD R. BENJAMIN, ESQ.**
**BENJAMIN**
P.O. Box 607
126 Riverside Drive
Binghamton, New York 13902
Attorneys for Plaintiff

**COSTELLO, COONEY, &**                **DANIEL R. ROSE, ESQ.**
**FEARON, PLLC**
211 West Jefferson Street, Suite 1
Syracuse, New York 13202
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On May 3, 2022, Plaintiff Maribeth Valada commenced this action in the Supreme Court of the State of New York, Broome County, alleging causes of action for defamation and intentional infliction of emotional distress ("IIED") against Defendants Armand V. Cucciniello, Jr. ("Defendant Cucciniello"), Anthony DiGiovanni ("Defendant DiGiovanni"), and ATP

1

Investigations LLC ("Defendant ATP").  *See* Dkt. No. 2.  On July 5, 2022, this action was removed to federal court.  *See* Dkt. No. 1.

Currently before the Court is Defendants' motion to dismiss.  For the following reasons, Defendants' motion is granted.

## II. BACKGROUND

According to the complaint, Plaintiff began employment as a property manager for Winding Brook Management Corp. ("Winding Brook") and Holly Manor Associates LLC ("Holly Manor") in November 2011.  *See* Dkt. No. 2 at ¶ 5.  Defendant Cucciniello was the director of property management at Winding Brook and Holly Manor and Plaintiff's direct supervisor.  *See id.* at ¶ 6.  Plaintiff alleges that Defendant Cucciniello began making sexual advances toward her shortly after she was hired and used his managerial position to force Plaintiff to engage in intimate relations with him.  *See id.* at ¶ 7.  Defendant Cucciniello's behavior continued until Plaintiff resigned from her position on March 10, 2022.  *See id.*

On March 10, 2022, Plaintiff sent a "demand letter" to Winding Brook and Holly Manor "seeking to resolve her claim without the need to resort to litigation."  *Id.* at ¶ 8.[1]  Winding Brook, Holly Manor, and Defendant Cucciniello sent a response letter on April 4, 2022, denying the allegations and alleging that "any long-term intimate relationship between [Plaintiff and Defendant Cucciniello] was purely consensual without any element of *quid pro quo*."  *Id.* at 16-17.[2]  This letter also asserted that Plaintiff was "a mature adult with a possible sordid background which we intend to fully explore and properly expose if [Defendant Cucciniello] is forced to

---

[1]  The March 10 letter is attached to the complaint as "Exhibit A."  *See* Dkt. No. 2 at 11-14.

[2]  The April 4 letter is attached to the complaint as "Exhibit B."  *See* Dkt. No. 2 at 15-17.

defend himself and his business enterprise." *Id.* at 17. The complaint alleges that Defendant Cucciniello thereafter retained Defendant ATP and Defendant DiGiovanni "for the purpose of defaming [P]laintiff, smearing her reputation, and otherwise maliciously seeking to intimidate and deter her from pursuing a sex discrimination claim … under the veneer of doing an investigation." *Id.* at ¶¶ 9, 11.

Plaintiff alleges that Defendant DiGiovanni contacted various New York residents[3] and "falsely suggest[ed] to them that [P]laintiff was promiscuous, engaged in previous relationships with married men, made or threatened false claims of sexual harassment for money, and was dishonest in every-day dealings." *Id.* at ¶ 15. Plaintiff specifically alleges that

> (a) On or about March 29, 2022, [D]efendant DiGiovanni contacted Dawn Moochler and interviewed her extensively, during which they had an interchange in which he asked Ms. Moochler did [Plaintiff] ever say anything about being depressed, to which she responded "No[,"] whereupon defendant asked her, "Did you know that she has been treated for depression?"
>
> (b) On or about March 29, 2022, [D]efendant DiGiovanni contacted Marty Lewis, [P]laintiff's ex-husband, and falsely told Lewis that [P]laintiff "had made claims that you [Lewis] had physically abused her." In a follow-up call to Lewis on or about April 6, [D]efendant DiGiovanni told Lewis he was calling as a "courtesy from one father to another" to let Lewis know he was going to be reaching out to speak to [P]laintiff's two sons.
>
> (c) On or about April 6, 2022, [D]efendant DiGiovanni spoke in person with Joe DeGennaro, in the course of which [Defendant DiGiovanni] asked him, "Did you know [Plaintiff] is mentally unstable?", "Did you know [Plaintiff] has a history of carrying on affairs with married men?", and "Did you know [Plaintiff] has a history of claiming sexual harassment?"

---

[3] Plaintiff identifies those individuals as Sue Ann Hutching, Karen Lawrence Roseman, Sherry Brill, Chris Kilmer, Susan Quinto, Joe DeGennaro, Andy Wacendak, Lisa Wacendak, Tina Caswell, Mary Claire Truman, Rene Hillagas, Bruce Swindlehurst, Pam and Anthony DeLucca, and Dawn Moochler. *See* Dkt. No. 2 at ¶ 14.

*Id.* The complaint also asserts that Defendant DiGiovanni sought to intimidate Plaintiff and "other individuals" "directly" by "untruthfully threatening to subpoena those individuals even though he knew at that time there was no legal action pending" and "was not an attorney." *Id.* at ¶ 16.

The complaint asserts two causes of action. *See id.* at ¶¶ 18-33. First, Plaintiff asserts that Defendant DiGiovanni's statements constituted defamation or defamation *per se* because they called into question Plaintiff's "honesty, trustworthiness, dependability, and professional fitness and abilities" and suggested that Plaintiff "committed a crime by extorting [Defendant] Cucciniello and the management company." *Id.* at ¶ 20. In her second cause of action, Plaintiff asserts an IIED claim for "subjecting her to defamatory statements and publicly accusing her of the crime of extortion." *Id.* at ¶ 29. Defendants now move to dismiss the complaint, arguing that (1) Defendant DiGiovanni's statements were "made during pre-litigation investigation [and] are shielded from liability under qualified immunity"; (2) Plaintiff has failed to state a defamation claim; and (3) Plaintiff has failed to state an IIED claim. *See* Dkt. No. 29-1 at 10-19. Plaintiff opposes the motion. *See* Dkt. No. 31 at 3-5.

### III. DISCUSSION

**A.  Legal Standard**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This assumption of truth, however, does not extend

4

to legal conclusions. *See Ashcroft v. Iqbal*, 56 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Magnifico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of the "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [] complaint must be dismissed[,]" *id.* at 570.

**B.      Qualified Immunity**

Under New York law, "absolute immunity from liability for defamation exists for oral or written statements made by attorneys in connection with a proceeding before a court 'when such words or writings are material and pertinent to the questions involved.'" *Front, Inc. v. Khalil*, 24

5

N.Y.3d 713, 718 (2015) (quoting *Youmans v. Smith*, 153 N.Y. 214, 219 (1897)). Although absolute immunity has not been extended to communications made prior to the commencement of anticipated litigation, *see id.* at 719, a qualified immunity is available for pre-litigation statements that are "pertinent to a good faith anticipated litigation." *Id.* at 720. "This requirement ensures that privilege does not protect attorneys who are seeking to bully, harass, or intimidate their client's adversaries by threatening baseless litigation or by asserting wholly unmeritorious claims, unsupported in law and fact, in violation of counsel's ethical obligations." *Id.*

The Court notes that the "pre-litigation privilege [was] intended to protect *attorneys* from defamations claims 'so that those discharging a public function may speak freely to zealously represent their clients without fear of reprisal or financial hazard.'" *Giuffre v. Maxwell*, No. 15-CV-7433, 2017 WL 1536009, *8 (S.D.N.Y. Apr. 27, 2017) (emphasis added) (quotation omitted). Defendant DiGiovanni is a non-attorney private investigator who was alleged to be acting at the behest of Defendant Cucciniello, also a non-attorney. *See* Dkt. No. 2 at ¶¶ 6, 13. Because these statements cannot be attributed to an attorney retained in anticipation of litigation, Defendants are not entitled to qualified immunity for Defendant DiGiovanni's alleged statements. *See Giuffre*, 2017 WL 1536009, at *8 ("Where the statement cannot be attributed to an attorney, there is no justification for protecting it by privilege").

**C.   Defamation and Defamation Per Se**

"Under New York law, a defamation claim requires 'a false statement, published without privilege or authorization to a third party, constituting fault,' that 'either cause[s] special harm or constitute[s] defamation per se.'" *Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-CV-2068, 2022 WL 1013982, *1 (2d Cir. Apr. 5, 2022) (quotation omitted). Defendants contend that Plaintiff has failed to adequately allege both special harm and defamation per se. *See* Dkt. No.

29-1 at 13-17.

### 1. Special Damages

"'Special damages consist of "the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation[.]"'" *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 179 (2d Cir. 2000) (quoting *Matherson v. Marchello*, 100 A.D.2d 233, 235 (2d Dep't 1984), *abrogated on other grounds by Laguerre v. Maurice*, 192 A.D.3d 44 (2d Dep't 2020)) (other citations omitted); *see also Liberman v. Gelstein*, 80 N.Y.2d 429, 434-35 (1992). "The nature of the special damages 'must be fully and accurately stated, with sufficient particularity to identify actual losses.'" *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 164 (E.D.N.Y. 2014) (quotation omitted).[4] "'[R]ound figures or a general allegation of a dollar amount ... will not suffice'" to meet a plaintiff's burden. *Id.* at 165 (quotations omitted).

Here, the complaint broadly alleges that Defendant DiGiovanni's statements have "caused [Plaintiff] to incur special damages in the form of actual pecuniary loss, including lost income, benefits, job security[,] … opportunities for career advancement[,] and … embarrassment, humiliation[,] and emotional injury." Dkt. No. 2 at ¶ 22. No further details are provided. These allegations are patently insufficient to meet Plaintiff's pleading requirements for special damages. *See Thorsen*, 996 F. Supp. 2d at 165 ("Plaintiffs' vague claims that they suffered 'loss of income'

---

[4] Some district courts appear to mistakenly indicate that the latter part of this quote originates from *Celle*. *See, e.g.*, *Thorsen*, 996 F. Supp. 2d at 264 (attributing this quote to a district court case, which, in turn, attributes the quote to *Celle*). The Court believes that this quote originally comes from *Matherson*. *See Matherson*, 100 A.D.2d at 235 ("[I]t is settled law that [special damages] must be fully and accurately identified 'with sufficient particularity to identify actual losses'").

and 'money damages' are inadequate") (quotation omitted); *see also Celle*, 209 F.3d at 179 (setting forth cases distinguishing special damages from actual damages under New York law).

### 2. Defamation Per Se

Because Plaintiff has failed to allege special damages, her defamation claims "are not sustainable unless they fall within one of the exceptions to the rule." *Liberman*, 80 N.Y.2d at 435. The four established exceptions "that have historically constituted slander per se in New York are those that (i) charge the plaintiff with a serious crime; (ii) tend to injure the plaintiff in his or her trade, business or profession; (iii) imply that the plaintiff has a loathsome disease; or (iv) impute unchastity to a woman." *Albert v. Loksen*, 239 F.3d 256, 271 (2d Cir. 2001) (citing *Liberman*, 80 N.Y.2d at 435). "'Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance.'" *Laguerre v. Maurice*, 192 A.D.3d 44, 50 (2d Dep't 2020) (quoting *Aronson v. Wiersma*, 65 N.Y.2d 592, 593 (1985)). Plaintiff argues that Defendant DiGiovanni's statements constitute defamation per se because (1) "they accuse [P]laintiff of committing a [serious] crime, namely, extortion," Dkt. No. 2 at ¶ 25; (2) they "impugn [P]laintiff['s] … honesty, trustworthiness, dependability, and professional fitness and abilities" and, therefore, injure her trade, business or profession, *id.* at ¶ 20; and (3) Defendant DiGiovanni's "false[] claim[] that [P]laintiff was treated for depression and that she was mentally unstable" meets the "loathsome disease" exception, Dkt. No. 31 at 4.

#### a. The Serious Crime Exception

Generally, an accusation of extortion is sufficient to meet the serious crime exception. *See Erdman v. Victor*, No. 20 CIV. 4162, 2021 WL 5359660, *3 (S.D.N.Y. Nov. 17, 2021) ("The statements made by Defendant to various law enforcement agencies and government officials accusing Plaintiff of … extortion impute a serious crime to Plaintiff and constitute defamation per

8

se"), *see also* N.Y. Penal Law § 155.05(2)(e). Here, however, the complaint never actually sets forth any statement made by Defendant DiGiovanni that directly accuses Plaintiff of extortion, or even one containing veiled or implied accusations of extortion. *See* Dkt. No. 2 at ¶¶ 15(a)-(c). Because the complaint does not allege any statement that conveys, "with reasonable specificity," that Plaintiff committed the crime of extortion, the serious crime exception is unavailable to Plaintiff. *Bernstein v. O'Reilly*, No. 17 CIV. 9483, 2019 WL 10995110, *5 (S.D.N.Y. Sept. 26, 2019) (holding that, under New York law, the use of colloquial phrases and loose statements— including "calling a party 'extortionate'" and "'a criminal'"—did not constitute defamation per se because those phrases did not convey with reasonable specificity that the party committed the crime of extortion).

### b. The Loathsome Disease Exception

A "loathsome disease" is defined under New York law as "one that is 'contagious [or] attributed in any way to socially repugnant conduct.'" *Nolan v. State*, 158 A.D.3d 186, 188 (1st Dep't 2018) (quoting *Golub v. Enquirer/Star Grp., Inc.*, 89 N.Y.2d 1074, 1077 (1997)); *see also Oakley v. Dolan*, 833 Fed. Appx. 896, 900 (2d Cir. 2020) (determining that the definition of "loathsome disease" is "limited to 'venereal' or 'communicable diseases' that are 'lingering and chronic' and that impel others to avoid contact with the disease 'carrier'") (quotation omitted). Here, Defendant DiGiovanni allegedly stated that Plaintiff "has been treated for depression" and "is mentally unstable." Dkt. No. 2 at ¶¶ 15(a), (c). Neither depression nor mental instability are contagious or venereal diseases related to socially repugnant conduct. *See Marino v. Jonke*, No. 11-CV-430 VB, 2012 WL 1871623, *11 (S.D.N.Y. Mar. 30, 2012) ("Mental illness does not constitute a 'disease' under defamation law").

### c. The Trade, Business, or Profession Exception

9

"To find that a statement qualifies as one that tends to injure another in his or her 'trade, business, or profession,' the statement 'must be made with reference to a matter of significance and importance for [the operation of the business], rather than a more general reflection upon the plaintiff's character or qualities.'" *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011) (quoting *Liberman*, 80 N.Y.2d at 436). "'A statement imputing incompetence or dishonesty to the plaintiff is defamatory per se if there is some reference, direct or indirect, in the words or in the circumstances attending their utterance, which connects the charge of incompetence or dishonesty to the particular profession or trade engaged in by plaintiff.'" *Spring v. Cnty. of Monroe*, 151 A.D.3d 1694, 1697 (4th Dep't 2017) (quotation omitted). Here, Defendant DiGiovanni's alleged statements are broadly directed at Plaintiff's character or general qualities, rather than her competence as a property manager. Because the complaint does not allege that "these statements were specifically directed at … [P]laintiff in [her] professional capacity," none of the alleged defamatory statements fall within the trade, business, or profession exception. *Davydov v. Youssefi*, 205 A.D.3d 881, 882 (2d Dep't 2022)

### d. The Sexual Misconduct Exception

Finally, although completely unaddressed by the parties, the fourth exception to proving special damages is for those statements "imput[ing] unchastity to a woman." *Liberman*, 80 N.Y.2d at 435 (citing Civil Rights Law § 77); *see also* Restatement (Second) of Torts § 574 (1977) ("One who publishes a slander that imputes serious sexual misconduct to another is subject to liability to the other without proof of special harm"). Here, the complaint alleges that Defendant DiGiovanni asked Joe DeGennaro if he knew Plaintiff had "a history of carrying on affairs with married men[.]" Dkt. No. 2 at ¶ 15(c). Although authority on this issue is sparse, it

appears that a stronger implication of sexual misconduct—*i.e.*, beyond a bare allegation of "affairs with married men"—is required to meet this exception. *Compare Hewitt v. Wasek*, 35 Misc. 2d 946, 948 (Sup. Ct. 1962) (holding that an allegation of "an affair between married people … does not necessarily involve sexual intimacy" and is, therefore, "not slanderous per se"), *and Zimmerman v. Kallimopoulou*, 56 Misc. 2d 828, 831 (N.Y. Civ. Ct. 1967) (collecting cases on statements implying sexual misconduct that were nevertheless held not libelous or slanderous per se), *with Torain v. Clear Channel Broad., Inc.*, 651 F. Supp. 2d 125, 152 (S.D.N.Y. 2009) (holding that "use of the terms 'slut' and 'whore[]' can give rise to per se liability for defamation") (citing *Walia v. Vivek Purmasir & Assocs., Inc.*, 160 F. Supp. 2d 380, 394-95 (E.D.N.Y. 2000)).

Because Plaintiff has not adequately alleged either special harm or defamation per se, her defamation claim must fail. Accordingly, Defendants' motion to dismiss Plaintiff's defamation claim is granted.

**D.     Intentional Infliction of Emotional Distress**

"[U]nder New York law, [IIED] may 'be invoked only as a last resort' … 'to provide relief in those circumstances where traditional theories of recovery do not.'" *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (quotations omitted). Thus, New York courts have consistently held that an IIED claim cannot be "brought where the challenged conduct 'falls well within the ambit of other traditional tort liability.'" *Id.* (quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 557-58 (1978)) (citing *Doin v. Dame*, 82 A.D.3d 1338, 1340 (3d Dep't 2011); *Leonard v. Reinhardt*, 20 A.D.3d 510, 510 (2d Dep't 2005); *Di Orio v. Utica City Sch. Dist. Bd. of Educ.*, 305 A.D.2d 1114, 1115 (4th Dep't 2003); *Hirschfeld v. Daily News, L.P.*, 269 A.D.2d 248, 249 (1st Dep't 2000)). "[W]here a plaintiff's intentional infliction of emotional distress claim is 'fully encompassed by

his defamation claim,' this obviates 'the need for him to proceed on an intentional infliction of emotional distress theory.'" *Potts v. Potts*, No. 3:19-CV-01403, 2021 WL 4440666, *10 (N.D.N.Y. Sept. 27, 2021) (quotation omitted); *see also Votsis v. ADP, LLC*, 187 A.D.3d 1490, 1492 (4th Dep't 2020); *Napoli v. New York Post*, 175 A.D.3d 433, 434 (1st Dep't 2019), *lv denied* 35 N.Y.3d 906 (2020). Here, Plaintiff's IIED claim fails as a matter of law because it is based on precisely the same facts and conduct as her defamation claim, *see* Dkt. No. 2 at ¶¶ 19-20, 29, 32, and seeks the same damages for the same harm, *see id.* at ¶¶ 26-27, 32-33.

Accordingly, Defendants' motion to dismiss Plaintiff's IIED claim is granted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 29) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 10, 2023
Albany, New York

Mae A. D'Agostino
U.S. District Judge